**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRACE MEDIA, INC., and CHIP BROWNLEE,<br><br>Plaintiffs,<br><br>-against-<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Case No. 26-5513 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Trace Media, Inc., and Chip Brownlee, by and through undersigned counsel, hereby allege as follows:

1. This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act"), for declaratory, injunctive, and other appropriate relief brought by Trace Media, Inc. ("The Trace"), an award-winning nonprofit newsroom, and one of its staff writers, Chip Brownlee ("Brownlee") (together, the "Plaintiffs").

2. By this action, Plaintiffs seek to compel the United States Department of Justice ("DOJ" or "Defendant") to comply with its statutory obligations to release records requested by Plaintiffs that concern actions taken in response to, and as part of, President Donald J. Trump's Executive Order 14206, issued February 7, 2025, entitled "Protecting Second Amendment Rights." Plaintiffs are statutorily entitled to disclosure of the requested records, which Defendant has withheld in violation of the Act.

**PARTIES**

3. Plaintiff The Trace is an independent, nonpartisan, nonprofit newsroom based in

Brooklyn, New York. Founded in 2015, The Trace is exclusively dedicated to reporting on gun violence and firearms in the United States.

4. Plaintiff Chip Brownlee, a resident of New York County, New York, is a staff writer at The Trace covering federal policy related to violence prevention and firearms.

5. Defendant Department of Justice is an agency of the federal government within the meaning of 5 U.S.C. §§ 551 and 552(f) that has possession, custody, and/or control of the records that Plaintiffs seek. DOJ's headquarters are located at 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTS

### Background

8. On February 7, 2025, President Donald J. Trump signed Executive Order 14206, entitled "Protecting Second Amendment Rights" (the "Executive Order"). *See* Exec. Order No. 14206, 90 Fed. Reg. 9503 (Feb. 12, 2025), https://perma.cc/TY99-W45N.

9. The Executive Order directs the United States Attorney General to "examine all orders, regulations, guidance" relating to existing federal policies regarding firearms for potential infringements of rights under the Second Amendment to the United States Constitution. *See id.*

10. Specifically, the Executive Order directs the Attorney General to review executive actions taken under the administration of former President Joseph R. Biden and to propose and finalize a plan of action "to protect the Second Amendment rights of all Americans." *See id.*

11. The Executive Order reads in relevant part:

> **Sec. 2.** *Plan of Action.* (a) Within 30 days of the date of this order, the Attorney General shall examine all orders, regulations, guidance, plans, international agreements, and other actions of executive departments and agencies (agencies) to assess any ongoing infringements of the Second Amendment rights of our citizens, and present a proposed plan of action to the President, through the Domestic Policy Advisor, to protect the Second Amendment rights of all Americans.
>
> (b) In developing such proposed plan of action, the Attorney General shall review, at a minimum: (i) All Presidential and agencies' actions from January 2021 through January 2025 that purport to promote safety but may have impinged on the Second Amendment rights of law-abiding citizens; (ii) Rules promulgated by the Department of Justice, including by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, from January 2021 through January 2025 pertaining to firearms and/or Federal firearms licensees; (iii) Agencies' plans, orders, and actions regarding the so-called "enhanced regulatory enforcement policy" pertaining to firearms and/or Federal firearms licensees; (iv) Reports and related documents issued by the White House Office of Gun Violence Prevention; (v) The positions taken by the United States in any and all ongoing and potential litigation that affects or could affect the ability of Americans to exercise their Second Amendment rights; (vi) Agencies' classifications of firearms and ammunition; and (vii) The processing of applications to make, manufacture, transfer, or export firearms.
>
> **Sec. 3.** *Implementation.* Upon submission of the proposed plan of action described in section 2 of this order, the Attorney General shall work with the Domestic Policy Advisor to finalize the plan of action and establish a process for implementation.

12. Recent regulatory and other actions indicate that the "plan of action"—as specified in Sections 2(a) and 3 of the Executive Order—exists and is being implemented.

13. For example, about a month after the Executive Order, DOJ published an interim final rule in March 2025 stating that it "expects its forthcoming plan under Executive Order 14206 to include legislative proposals," expressly acknowledging the plan's existence and/or imminent completion as of that date. *See Withdrawing the Attorney General's Delegation of Authority*, 90 Fed. Reg. 13,080 (Mar. 20, 2025), https://perma.cc/YS5W-GKQW.

14. Moreover, the website for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") maintains an entire page devoted to the Executive Order and the agency's actions in response thereto. The webpage is entitled "Protecting Second Amendment Rights" and

was last updated on May 21, 2025—about 15 weeks after the Executive Order. The webpage notes that, "[p]ursuant to that [Executive] [O]rder," ATF "reviewed the 2021 Enhanced Regulatory Enforcement Policy (EREP)" promulgated during the Biden Administration and, as of May 2025, "ATF replaced th[at] policy with a new administrative action policy. . . provid[ing] a fair framework for addressing violations." *Protecting Second Amendment Rights*, Bureau of Alcohol, Tobacco, Firearms & Explosives (May 21, 2025), https://perma.cc/4PB9-7MYJ (last visited Aug. 25, 2026).

15. Further illustrative of the existence of a DOJ plan of action is a December 8, 2025 announcement by Assistant Attorney General Harmeet Dhillon on social media, highlighting that DOJ had just created a new Second Amendment Section within its Civil Rights Division, and that DOJ "has a lot of 2A work planned, in addition to what we've already done!" Harmeet Dhillon (@AAGDhillon), X (formerly Twitter) (Dec. 8, 2025) (online at https://perma.cc/RW54-7U7S). The new Second Amendment Section of the Civil Rights Division also has a clear published mission statement on its website that tracks the language of the Executive Order: to "enforce[] the Second Amendment rights of law-abiding American citizens" and "investigate[] alleged patterns or practices of Second Amendment infringement by law enforcement." *Second Amendment Section,* U.S. Dep't of Justice, C.R. Div., https://www.justice.gov/crt/second-amendment-section [https://perma.cc/94GB-CSD2] (last visited Sept. 3, 2026).

16. Moreover, and consistent with what one would expect to see if DOJ were operating pursuant to the Executive Order, the Second Amendment Section of the Civil Rights Division has published myriad press releases highlighting numerous court actions that have been brought by the new Section against states and municipalities for alleged unconstitutional patterns and practices with respect to the Second Amendment. *See, e.g.*, Press Release dated August 3, 2026 entitled

"Justice Department Sues Montgomery County, MD for Violating Supreme Court's Wolford Decision"; Press Release dated July 1, 2026 entitled "Justice Department Sues the Commonwealth of Virginia for Unconstitutional Weapons Bans"; Press Release dated May 6, 2026 entitled "Justice Department Sues Colorado for Unconstitutional Weapons Ban of Standard-Capacity Firearms Magazines." The combination of a formal new Section within DOJ, along with its active litigation docket, is suggestive of a guiding agenda, and one that is substantively similar to the themes and commands of the Executive Order.

17. Further, DOJ and ATF recently published final rules that expressly cite Executive Order 14206, which serves as further evidence of a plan of action. For example, on August 20, 2026, ATF published a rule regarding the concept of presumptive disqualification for firearm ownership under 18 U.S.C. § 922(g)(5). *See* 91 Fed. Reg. 54,054 (Aug. 20, 2026) (to be codified at 27 C.F.R. pt. 478; 28 C.F.R. pts. 0, 25, 107). As for its justification for the rule, ATF states:

> The establishment of a presumptive disqualification for all persons who fall under section 922(g)(5), whether lawfully or unlawfully present, is consistent with Executive Order 14206, 90 FR 9503, (Feb. 7, 2025) ("Protecting Second Amendment Rights"), which directs executive agencies and departments to assess any ongoing infringements of the Second Amendment rights "of our citizens" and to create a plan of action to protect the Second Amendment rights "of all Americans." The order also emphasizes that the Attorney General should pay particular attention to previous presidential policies that may have impaired the rights of "law-abiding citizens," highlighting that the Department should prioritize protection for citizens rather than aliens, regardless of whether the aliens are in the country lawfully or unlawfully. . . . In the Department's view, the presumptive disqualification of all individuals prohibited from owning firearms under section 922(g)(5) . . . will enable it to direct more resources towards applications from citizens, consistent with Executive Order 14206.

18. Particularly in light of these developments, Plaintiffs are informed and believe that DOJ is implementing a "plan of action," and that it has made related changes, findings, regulatory and legislative proposals, litigation strategy decisions, and more, in response to the Executive Order.

19. However, as far as The Trace is aware, DOJ has not made public its "plan of action" or its "process for implementation" as specified in Sections 2(a) and 3 of the Executive Order. Nor has DOJ publicly identified the "orders, regulations, guidance, plans, international agreements, and other actions of executive departments and agencies" that were examined and assessed by the Attorney General for "ongoing infringements of the Second Amendment." Executive Order § 2(a). The public is currently in the dark as to the results of the Attorney General's "examin[ation]," the resulting plan of action, and steps taken by DOJ and other agencies to comply with the plan.

**Plaintiffs' FOIA Request**

20. On July 22, 2026, Brownlee submitted a FOIA request on behalf of himself and The Trace to DOJ (the "Request"). A true and correct copy of the Request is attached hereto as Exhibit 1.

21. The Request sought "[r]esponsive records related to President Donald Trump's Executive Order (EO 14206) issued February 7, 2025, entitled 'Protecting Second Amendment Rights,' including but not limited to" the below identified categories:

> 1) The plan of action described in Section 2(a) of the Executive Order, including any appendices or supporting documentation associated therewith.
>
> 2) Any documents, memoranda, reports, and other relevant documents related to the Attorney General's examination and assessment, as outlined in Section 2(b) of the Executive Order.
>
> 3) Any documents, memoranda, reports, and other relevant documents related to the Attorney General's process for implementation, as described in Section 3 of the Executive Order.
>
> 4) Any documents including, but not limited to, guidance, directives, protocols, and procedures, policies relating to the plan of action pursuant to EO 14206.
>
> 5) Records concerning the implementation of the plan of action, including the names of specific regulations, initiatives, or actions, whether in process or already completed, as well as memoranda or

> reports prepared by the Department of Justice or any other agency to carry out the plan.
>
> 6) Any communications, documents, memoranda, reports, and other relevant documents exchanged with, inter alia, lobbying groups, industry trade groups, advocacy groups, individuals, and any other nongovernmental entity or person in developing the plan of action or otherwise in response to the Executive Order.

*See* Ex. 1 at 2.

22. Plaintiffs' Request sought a fee benefit; The Trace and Brownlee are representatives of the news media pursuant to 5 U.S.C. § 552(a)(4)(A). *See id.*

23. On July 28, 2026, DOJ acknowledged the Request was received on July 23, 2026, and assigned it tracking number FOIA-2026-04147. A true and correct copy of DOJ's July 28, 2026 acknowledgment letter is attached hereto as Exhibit 2.

24. In its acknowledgment letter, DOJ requested an extension to respond to the Request, citing "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B)(i)-(iii). Ex. 2. The letter also stated that, "in an effort to facilitate" its response to the Request, DOJ intended to limit its search for relevant records to "Official Correspondences" and "Emails and Attachments"; it stated it would not search "Calendars," "Standalone Documents," or "Classified Records" in response to the Request unless directed to by The Trace. *Id.*

25. On August 12, 2026, The Trace responded to DOJ's acknowledgment letter via email. A true and correct copy of The Trace's August 12, 2026 email response is attached hereto as Exhibit 3. The Trace expressly directed DOJ to search all five categories of agency records identified in its acknowledgment letter in response to the Request. Ex. 3.

26. On August 28, 2026, DOJ responded to Plaintiffs. A true and correct copy of DOJ's August 28, 2026 email response is attached hereto as Exhibit 4. DOJ's response noted that "no portions" of the Request "would include items in categories 3–5 that aren't also likely to be located

in items 1 and 2." Ex. 4.

27. As of the filing of this Complaint, Plaintiffs have received neither a final determination nor any records in response to their Request.

28. Defendant has not cited any exemptions to withhold records or portions thereof that are responsive to the Request.

29. As of the filing of this Complaint, the Request has been pending for 31 days, excepting Saturdays, Sundays, and legal public holidays.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF FOIA FOR FAILURE TO COMPLY WITH STATUTORY DEADLINES

30. Plaintiffs repeat, reallege, and incorporate the allegations set forth in the foregoing Paragraphs 1 through 29 as though fully set forth herein.

31. Defendant is an agency subject to FOIA. 5 U.S.C. §§ 551, 552(f).

32. The Request properly seeks records within the possession, custody, and/or control of Defendant under FOIA.

33. The Request complied with all applicable regulations regarding the submission of FOIA requests.

34. Defendant failed to make a timely determination regarding Plaintiffs' Request, violating the statutory deadline imposed by FOIA. 5 U.S.C. § 552(a)(6).

35. Plaintiffs have and/or are deemed to have exhausted applicable administrative remedies with respect to the Request. 5 U.S.C. § 552(a)(6)(C)(i).

### COUNT II: VIOLATION OF FOIA FOR UNLAWFUL WITHHOLDING OF AGENCY RECORDS

36. Plaintiffs repeat, reallege, and incorporate the allegations set forth in the foregoing Paragraphs 1 through 35 as though fully set forth herein.

37. Defendant is an agency subject to FOIA. 5 U.S.C. §§ 551, 552(f).

38. The Request properly seeks records within the possession, custody, and/or control of Defendant under FOIA.

39. The Request complied with all applicable regulations regarding the submission of FOIA requests.

40. Defendant has not released any records or portions thereof in response to the Request.

41. Defendant has not cited any exemptions to withhold records or portions thereof that are responsive to the Request.

42. Defendant has not identified whether or how it is reasonably foreseeable that release of the records sought by the Request would harm an interest protected by a FOIA exemption and/or why disclosure is prohibited by law. 5 U.S.C. § 552(a)(8).

43. Defendant has improperly withheld records responsive to the Request in violation of FOIA. 5 U.S.C. § 552(a)(3)(A).

44. Plaintiffs have and/or are deemed to have exhausted applicable administrative remedies with respect to the Request. 5 U.S.C. § 552(a)(6)(A)(ii); *id.* § 552(a)(6)(C)(i).

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) order Defendant to conduct a search reasonably calculated to identify all records responsive to the Request and to immediately disclose all records or portions thereof responsive to the Request that cannot lawfully be withheld under FOIA;

(2) issue a declaration that Plaintiffs are entitled to disclosure of all such records responsive to the Request;

(3) enjoin Defendant from continuing to withhold any and all records or portions thereof responsive to the Request that cannot lawfully be withheld under FOIA;

(4) award Plaintiffs reasonable attorney fees and costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) grant such other relief as the Court may deem just and proper.

Dated: September 4, 2026

Respectfully submitted,

*_/s Katie Townsend_*
Katie Townsend
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
KTownsend@gibsondunn.com

Mark J. Cherry
Liesel N. Schapira
Liam A. Fine
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
MCherry@gibsondunn.com
LSchapira@gibsondunn.com
LFine@gibsondunn.com

*Counsel for Plaintiffs*